**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 31, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

MAURICE L. MILES, JR.,

    Plaintiff - Appellant,

v.

DEPUTY CONRAD, in his official
capacity with Reno County Sheriff's
Department; DEPUTY SWONGER, in his
official capacity with Reno County
Sheriff's Department; DEPUTY
MONDRAGON, in his official capacity
with Reno County Sheriff's Department;
DEPUTY CARDER, in his official
capacity with Reno County Sheriff's
Department,

    Defendants - Appellees.

No. 19-3133
(D.C. No. 5:16-CV-03152-EFM)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HOLMES**, **EID**, and **CARSON**, Circuit Judges.
_____

Maurice Miles, Jr., a Kansas inmate appearing pro se, appeals from the district

court's entry of final judgment in favor of Defendants on his 42 U.S.C. § 1983 claims

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

stemming from an assault he endured at the hands of another inmate. Exercising

jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. Background

Officials at the Reno County Jail assigned Mr. Miles to a cell he shared with

inmate Robert Sallabedra. Mr. Miles did not get along with Mr. Sallabedra. He

voiced several complaints about his housing assignment via the jail's "turnkey

system" for inmate communications. The district court recounted Mr. Miles's

complaint history:

> On May 29, 2016, Plaintiff submitted his first turnkey request related to his cellmate. In this request, submitted at 5:03 a.m., he stated: "Please can I move cells? i keep catching my cellie digging through my stuff and its pissing me off." Deputy Nall reviewed and denied the request on May 29 at 6:47 p.m.
>
> At 6:08 p.m., on May 30, 2016, Plaintiff submitted a second turnkey request. In it, he said: "I dnt know why yall do this to me. Is it a set up to fail? I do not get along with my cellie at as a room mate theres plenty of other cells in this pod that are open. Can you please move me?" The next day, at 6:20 p.m., Deputy Conrad responded: "You will not be moved."
>
> Five days later, on June 4, 2016, at 8:09 p.m., Plaintiff sent a message: "I just to make sure that I dont get into any truble for the stolen books that my cellie has been hording in our cell the next time you shake down." Deputy Nall responded with "Noted."
>
> On June 6, Plaintiff sent the following message about his cell mate: "People are talking about woopin my cellie for stealing and tering up the librarybooks an he keeps stealing coffee from people as well. Something need to be done soon about it." That same day, Deputy Wornkey replied with "noted."
>
> On June 7, 2016, at 9:36 p.m., Plaintiff sent his fifth turnkey report about his cellmate: "Imasking that you please do something with my cellie, if he steals or disrespects me one more time Im gonna end up

2

in the hole. He constantly disrespects this whole pod. Im not going to keep putting up with his stealing from me problem." There was no response to this message.

On June 9, 2016, at 4:51 a.m., Plaintiff sent the following message: "Are yall realy serious? I mean we gave a nte t the gaurds last night with over 10 signatures on it to move salabedra out of this pod and yall still ignore us? So what do we do now? All go to the hole for handeling it our selvs? Everybody is ready to woop this dudes [expletive] if something dont happen. The stealing and disrespect has gone to far."

R. Vol. II at 199–200.

About 10 minutes after this last turnkey communication Mr. Miles and Mr. Sallabedra had a physical altercation. Mr. Miles bases this suit on injuries he sustained during his fight with Mr. Sallabedra.

Mr. Miles filed three motions seeking appointment of counsel under 28 U.S.C. § 1915(e)(1). The district court denied each of these motions. The district court dismissed the claims against Defendants Swonger, Mondragon, and Carder by applying the doctrine of qualified immunity and Rule 12(b)(6). It then granted summary judgment to Defendant Conrad. This appeal followed.

## II. Discussion

As relevant to this appeal, Mr. Miles's § 1983 claims seek damages for Defendants' alleged failure to protect him from the harm inflicted by Mr. Sallabedra, in violation of his Eighth Amendment rights. The Eighth Amendment's prohibition of cruel and unusual punishment imposes a duty on prison officials to provide humane conditions of confinement, including "reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal

3

quotation marks omitted).  "This duty includes 'a duty to protect prisoners from violence at the hands of other prisoners.'"  *Requena v. Roberts*, 893 F.3d 1195, 1214 (10th Cir. 2018) (quoting *Farmer*, 511 U.S. at 833), *cert. denied*, 139 S. Ct. 800 (2019).  "To prevail on a failure to protect claim, an inmate must show (1) that the conditions of his incarceration present[ed] an objective substantial risk of serious harm and (2) prison officials had subjective knowledge of the risk of harm."  *Id.* (internal quotation marks omitted).  To satisfy the second prong, an official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer*, 511 U.S. at 837.

## A.  Rule 12(b)(6) Dismissals

We review the district court's application of the doctrine of qualified immunity and its Rule 12(b)(6) dismissal de novo.  *See Lincoln v. Maketa*, 880 F.3d 533, 537 (10th Cir. 2018).

"The doctrine of qualified immunity protects officials from civil liability as long as they do not 'violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Id.* (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  Where a complaint asserts

claims against multiple defendants, "[i]t is particularly important that plaintiffs make clear exactly *who* is alleged to have done *what* to *whom*, as distinguished from collective allegations." *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013) (ellipsis and internal quotation marks omitted).

The district court found that the complaint contained nothing more than conclusory allegations that Defendants Swonger, Mondragon, and Carder violated Mr. Miles's constitutional or statutory rights. And it further found that the collective allegations against these Defendants failed to adequately specify which of them took the alleged wrongful actions. Mr. Miles does not point to any allegations in his complaint that undermine these conclusions or otherwise advance a reasoned argument that the court erred in reaching them. We affirm the dismissal of Defendants Swonger, Mondragon, and Carder for substantially the same reasons cited by the district court.

## B. Denial of Motions to Appoint Counsel

"We have previously directed district courts to evaluate, in connection with a request to appoint counsel under § 1915, the merits of a prisoner's claims, the nature and complexity of the factual and legal issues, and the prisoner's ability to investigate the facts and present his claims." *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1115 (10th Cir. 2004). "The burden is upon the applicant to convince the court that there is sufficient merit to his claim to warrant the appointment of counsel." *McCarthy v. Weinberg*, 753 F.2d 836, 838 (10th Cir. 1985) (per curiam).

5

"We review a district court's refusal to appoint counsel for an indigent prisoner in a civil case for an abuse of discretion." *Hill*, 393 F.3d at 1115. We will reverse the district court's ruling "[o]nly in those extreme cases where the lack of counsel results in fundamental unfairness." *Id.* (internal quotation marks omitted).

In denying each of Mr. Miles's motions seeking appointment of counsel, the district court provided a reasoned explanation. It denied his first motion after concluding that the entire case should be dismissed due to Mr. Miles's failure to exhaust his administrative remedies, and principally based this ruling on its view that Mr. Miles did not assert a colorable claim. After Mr. Miles successfully convinced us, while appearing pro se, to reverse the district court's first dismissal of his case, the district court denied his second motion for appointment of counsel without prejudice because (1) Mr. Miles did not meet his burden to convince the court that his claims had merit; (2) the case turned on events directly involving Mr. Miles and he did not need professional training to explain what allegedly happened to him; (3) the court believed Mr. Miles demonstrated an ability to represent himself, including by convincing us to reverse the district court's first dismissal of his case; and (4) Mr. Miles's case was not legally or factually complex. The district court denied Mr. Miles's third motion because (1) he did not point to any change in circumstances that supported his request; (2) intervening filings in the case enlightened the court as to additional weaknesses in his case; and (3) Mr. Miles had continued to show an ability to competently represent himself.

Mr. Miles does not explain how the district court abused its discretion in denying his motions to appoint counsel. We have reviewed the district court's stated rationales and conclude that it did not abuse its discretion in denying any of Mr. Miles's motions seeking the appointment of counsel.[1]

## C. Summary Judgment

We review the district court's summary judgment decision de novo, viewing the factual record and making reasonable inferences from it in the light most favorable to the nonmoving party. *Bird v. W. Valley City*, 832 F.3d 1188, 1199 (10th Cir. 2016). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmoving party, and a fact is material when it might affect the outcome of the suit under the governing substantive law." *Bird*, 832 F.3d at 1199 (alteration and internal quotation marks omitted). "A movant that will not bear the burden of persuasion at trial need not negate the nonmovant's claim. Such a movant may make its prima facie demonstration simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Felkins v. City of*

---

[1] As a corollary to his argument regarding the appointment of counsel, Mr. Miles complains that neither the court nor anyone else contacted witnesses on his behalf or otherwise gathered his evidence. This remonstration misses the point that Mr. Miles has the burden to prove his case. And Mr. Miles does not point to any error the district court made with respect to his efforts to marshal evidence supporting his claims.

*Lakewood*, 774 F.3d 647, 653 (10th Cir. 2014) (alteration and internal quotation marks omitted).

The district court found that while the evidence "demonstrates that [Mr. Miles] communicated several times with prison staff that [Mr. Miles's] cellmate was stealing from him and that they were not getting along," Mr. Miles "did not communicate concern that the conditions posed a substantial risk of serious harm." R. Vol. II at 204. The court therefore found no fact issue that the conditions of Mr. Miles's incarceration presented an objective substantial risk of serious harm. It further found no evidence that Defendant Conrad had subjective knowledge of the risk of harm, noting as follows: "*None* of the turnkey reports indicate aggressive or threatening behavior by Sallabreda [sic] *towards* [Mr. Miles]. *None* of the turnkey reports indicate [Mr. Miles's] concern of any violence *from* Sallabreda [sic]. If anything, the last few turnkey communications indicate that [Mr. Miles] may harm Sallabedra." *Id.* at 205.

Mr. Miles does not advance a reasoned argument that the district court misconstrued the evidence, nor does he cite any evidence in the record that undermines the court's conclusion. We affirm the grant of summary judgment to Defendant Conrad for substantially the same reasons cited by the district court.

### III. Conclusion

We affirm the district court's (1) dismissal of Defendants Swonger, Mondragon, and Carder, (2) denial of Mr. Miles's motions for appointment of counsel, and (3) entry of summary judgment in favor of Defendant Conrad.

8

We grant Mr. Miles's motion to proceed without prepayment of costs and fees.

Entered for the Court


Jerome A. Holmes
Circuit Judge